In the Matter of Proving the Last Will and Testament of ANNIE LINK, Deceased, as a Will of Real and Personal Property.

CLAUDINE TOBIN and Another, Appellants, Respondents; EDITH L. SALTER and Others, Respondents, Appellants.

First Department, March 8, 1935.

*Joseph V. McKee* of counsel [*Hugo Wintner* and *Robert J. Fox*, with him on the brief; *Edwin C. Mulligan*, attorney], for the proponents.

*Francis L. Field* of counsel [*Joseph A. Beehan* with him on the brief; *William E. Beehan*, attorney], for the contestants.

MERRELL, J. Annie Link, the decedent, residing at 228 West Seventy-first street, borough of Manhattan, New York city, departed this life on September 28, 1933, leaving an estate of nearly $150,000 in personal property. Four days prior to her death, on September 24, 1933, she executed, in due form, the instrument which was thereafter offered for probate as her last will and testament. Decedent had never made a prior will. The proposed will, after directing the payment of the debts and funeral expenses of the decedent, in the second and third clauses gave to Claudine Tobin, the wife of the decedent's attending physician, all of her property, consisting of wearing apparel, household furniture, etc., and all stocks, bonds and investments, deposits and bank accounts in the name of the decedent, to be the property of said Claudine Tobin, absolutely. By the fourth clause of the will of the decedent it was provided that all the rest, residue and remainder of her estate, wheresoever situate, including all income or interest in the estate

of Bernard Link, decedent's deceased husband, was given " to my beloved niece, Edith L. Salter, of Haynes Farm, Partridge Green, Sussex, England, and to her own use, absolutely." When the said instrument was offered for probate by the executors named therein, objections to the probate were filed with the surrogate by all but two of twelve nephews and nieces and two grandnephews, all nonresident aliens, and all, save one, residing in England, the single exception being a resident of Canada. Upon the filing of such objections an order was entered in Surrogate's Court of New York county framing issues to be tried by jury in Surrogate's Court. These issues as framed were as follows:

" 1. Did Annie Link, the testatrix, subscribe the paper offered for probate bearing date the 24th day of September, 1933, at the end thereof in the presence of each of the subscribing witnesses or acknowledge to each of them that the subscription appearing on said paper had been made by her?

" 2. At the time of making such subscription or acknowledgment, did the testatrix declare to each of the subscribing witnesses that the paper offered for probate was her last will and testament?

" 3. Were there at least two subscribing witnesses, each of whom signed his name at the end of said paper, at the request of the testatrix?

" 4. At the time of the execution of said paper on the 24th day of September, 1933, was the said Annie Link of sound mind and competent to dispose of her estate by will?

" 5. Was the execution of said paper caused or procured by the undue influence of any person or persons?

" 6. Was the execution of said paper caused or procured by the fraud of any person or persons? "

The trial, resulting in the order appealed from, was the second trial of the issues. The factum of the due execution by the decedent of the will in question was not contested. In other words, it was not disputed that the said Annie Link subscribed the paper in the presence of two subscribing witnesses and declared the same to said witnesses as and for her last will and testament, each of whom signed his name at the end of the paper at the request of the testatrix.

There were three issues submitted to the jury upon the first trial:

" 1. At the time of the execution of said paper on the 24th day of September, 1933, was the said Annie Link of sound mind and competent to dispose of her estate by will?

" 2. Was the execution of said paper caused or procured by the undue influence of any person or persons?

"3. Was the execution of said paper caused or procured by the fraud of any person or persons?"

At the first trial the jury found that "there was no fraud," and, by the direction of the court, that the will was "duly executed." The jury disagreed on the issues of "testamentary capacity" and "undue influence," and on those two issues the surrogate directed a new trial. There was no appeal from so much of the verdict of the jury as found that there was no fraud in the execution of the will. There then remained the two issues of *testamentary capacity* and *undue influence,* which were submitted to the jury at the second trial, which was also held before Surrogate DELEHANTY. These issues submitted to the jury were as follows: *First,* whether, at the time of the execution of the paper propounded for probate as the last will and testament of the said Annie Link, she was of sound mind and competent to dispose of her estate by will; and, *second,* whether the execution of said paper was caused or procured by undue influence of any person or persons.

The trial was a protracted one and a large amount of testimony was given, both on the part of the proponents and on the part of the contestants. At the close of the evidence the issues were submitted to the jury in a very fair charge by Surrogate DELEHANTY. The jury returned a verdict in the affirmative on the first issue, to wit, that the said testatrix, at the time of the execution of the paper in question, was of sound mind and competent to dispose of her estate by will. The second question considered by the jury, as to whether or not the execution of said paper was caused or procured by the undue influence of any person or persons, the jury answered in the negative. Upon the rendition of such verdict, counsel for the contestants moved to set aside the same as contrary to the evidence, and upon all the grounds stated in the Surrogate's Court Act. Said motion was entertained and decision thereon reserved. Finally Surrogate DELEHANTY, in a long opinion, set aside the verdict and granted the motion of the attorney for the contestants, and directed a new trial of the issues before Surrogate FOLEY.

Annie Link, at the time of the execution of the will in question, was sixty-two years of age, and, since the death of her husband, which occurred in 1917, had practically the entire management of his estate, amounting to nearly $150,000. Her husband was a pioneer in the business of outdoor advertising. The evidence disclosed that she was a person of strong mind and determination. She died childless and without any relatives nearer than nephews and nieces and grandnephews, all, with the exception of a single resident of Canada, residing in England. The evidence shows that it had been her custom, for a number of years, to assist financially

her English nephews and nieces to a considerable extent, and that annually, in quarterly payments, she had been accustomed to bestow upon them largess to the amount of £1,000 or more.

The main ground upon which the contestants seek to have denied for probate the instrument in question was the fact that she practically disinherited her distant relatives in England, who were the contestants here, and gave practically all of her property to the wife of her attending physician, Dr. Tobin. The testatrix and her physician and his wife, Claudine Tobin, for a number of years had resided together in the Robert Fulton Hotel in New York city. They had become intimate. The evidence shows that a few years prior to the making of the will in question the testatrix suffered from cancerous growth upon her cheek and that Dr. Tobin had attended her and rendered surgical assistance to her by the use of the radium seed treatment and had apparently eradicated the cancer on the cheek of the testatrix, and for which she was duly grateful. There is an abundance of evidence of the intimate relations between the wife of Dr. Tobin, Claudine Tobin, and the testatrix. They were frequently together, and the evidence shows that Dr. Tobin, for some years, had treated the decedent without charge. These circumstances are seized upon by the surrogate in setting aside the verdict of the jury. The suggestion is made by the surrogate in his opinion that the questions involved were difficult of proper comprehension by a jury and, in the opinion of the surrogate, the jury failed adequately to perform its duty by reason of such lack of comprehension. The issues presented to the jury in this case were very simple ones. The scrivener of the will was an attorney by the name of Edwin C. Mulligan, who, so far as any evidence disclosed, acted entirely impartially and prepared the will, which was offered for probate, in accordance with the express wish of the testatrix. There was an abundance of testimony justifying the verdict of the jury in finding that, at the time of the execution of this will, the testatrix was of sound mind and memory and entirely capable of making a will disposing of her property. So far as any evidence appears in the record, there is an entire absence of any proof showing any exercise of undue influence exerted on the testatrix by any person. The will was executed in the absence of Dr. Tobin and of his wife who was the chief beneficiary therein named. The testimony of Attorney Mulligan was straightforward, clear, and seems to me most convincing. In any event, the jury was impaneled, and it then was given the determination of the questions of fact submitted to it.

I think a very different situation arose here, where the relatives are no nearer than nephews and nieces or grandnephews residing

in a foreign land. If the contestants were a husband, or children, or even brothers or sisters, of the testatrix, a very different situation would be presented. There was nothing out of the ordinary in the questions of fact presented to the jury. Juries are every day called upon to determine such questions of fact, and do so without any criticism on the part of anybody.

Much is made of the fact that the provision contained in the will for the benefit of the niece of the testatrix, Edith L. Salter, residing in England, was an empty gesture, and that the provisions for her benefit were without substance. It developed, however, that she will receive a considerable amount by way of commissions due to the decedent upon her husband's estate. She may well have had such fact in mind when she gave to her said niece " all income or interest in the estate of my deceased husband, Bernard Link." Be that as it may, we have here simple issues submitted to a jury, and the jury's verdict should be, we believe, a conclusive determination of such issues. The verdict of the jury was not against the weight of the evidence. The order setting aside the verdict of the jury and granting a new trial should be reversed, and the verdict of the jury reinstated, with costs to the proponents payable out of the estate.

The court properly, in the order appealed from, denied the motions of the proponents and the contestants for the direction of a verdict, respectively, in their favor, and, in so far as said order denied said motions, the same should be affirmed.

MARTIN, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Order, so far as it grants contestants' motion to set aside verdict and for a new trial, reversed and the verdict reinstated, with costs to the proponents payable out of the estate; and affirmed in so far as appealed from by the contestants; and the proceeding remitted to the Surrogate's Court for further action in accordance with the opinion of this court. Settle order on notice.